Mr. Avalar Good morning, Your Honors. As the Court knows, Professor Follick has five minutes of our time, and I would like to try and reserve two minutes for rebuttal, if that's at all possible. So you'll need to stop then at 13, when you're down to, I'm sorry, after 13 minutes. We have seven minutes left. Yes, Your Honor. Your Honor, roughly 1,000 years ago, well before the invention of high school, people learned, first learned how to shoe horses. Esteban Norris also does not have a high school diploma. He simply wants to take an eight-week class at the Pacific Coast Horseshoeing School, PCHS, to learn this same skill without having to put his life on hold to take and pass an irrelevant government test first. In this de novo appeal from a 12b6 dismissal, the sole question is whether the First Amendment applies to restrictions on teaching and learning that churn on the content of what is taught and learned. Here, the vocational skill of horseshoeing as opposed to a recreational or avocational skill. California tacitly recognizes the First Amendment applies to restrictions on teaching and learning, but claims here that it is not regulating teaching and learning, just contracting for teaching and learning. Counsel, I've got a couple of questions just about how the statute functions. And if you could just help me with that, and I may put these questions to the state as well. So it appears that California regulates this by, through the certificate, the enrollment agreement. 94902 says that an enrollment agreement is not enforceable if you don't have that, unless you've got the approval to operate and other things. 904 says that the student shall not enroll. So if the school had gone ahead and enrolled your client without obtaining the certificate, how does the state enforce this? Is it enforced against the student? Is it enforced against the school? It's enforced against the school. And what do they do? They fine them? At that point, you are no longer meeting the minimum operating standards. And if you're not meeting the minimum operating standards, you can be fined, or theoretically, you can have your license as a school pulled from you. And so what the statutes say is you must execute an enrollment agreement. A student shall enroll solely by means of executing an enrollment agreement. That's 949028. And then, of course, it defines enrollment agreement later. And it's very clear that a student... Is there a private remedy there as well? That is, if your client had enrolled, completed the course, and then not made the payments that we're owing to the school, is the agreement not enforceable? That is, in contract, he would have a defense against a suit by the school for his tuition? That's the provision in 902B. An enrollment agreement is not enforceable. I'm wondering whether the private contract remedy... I'm trying to figure out how this statute is enforced. Your Honor, I confess I don't know whether there's a private remedy here. I do know that the student can't... It's illegal for a student to waive the provisions of the code. And so a student can't waive the requirement of an enrollment agreement. So I take that as being an enroll... You have to have an enrollment agreement. You can only enroll through an enrollment agreement. And you can't get around that requirement in any way, shape, or form. Those are the requirements that we are operating under. So my clients would very much like to enter into an enrollment agreement, and they are prohibited from doing so because Mr. Norris does not have a high school diploma or its equivalent. He's, therefore, deemed an ability-to-benefit student, and he has to take and pass a government exam before he's then allowed to enter into this very specific kind of agreement. This isn't — I want to be clear, this is a very specific kind of contract. It is a contract for speech. Mr. Norris isn't prohibited from entering into any other kind of contract. He can spend as much money as he wants learning a recreational skill. He can spend as much money as he wants on a contract for a house or a car or lots of other things. It's only because of the way that the statutes are written, it's when he enters into a contract for vocational teaching that he is then regulated. And that's the sort of thing that the U.S. Supreme Court has said is a restriction on speech. The government may not restrict contracts for speech specifically. This isn't a sort of — as we have talked about in our reply brief, this isn't a sort of general regulation that applies generally. This is a regulation, as California recognizes, that is very specifically aimed at vocational teaching. As California says in its brief, as justification for this restriction, it's the prospect of being able to earn a living and pursue a career that makes people like Mr. Norris, who don't have a high school diploma, vulnerable to making bad decisions about their education. Now, whether that's true or not, we don't think it's true. That's not the point on a 12b6 motion. It's true that the justification for the regulations very much turns on the fact that this is vocational teaching. That is the content of what is being taught and learned. With this 12b6 motion, what is the issue squarely in front of me? Isn't it not that you have not plausibly alleged that this would be a restriction on speech? At that point, the burden switches to the government? That's my understanding, Your Honor. I take the district court's opinion here to say — well, first of all, I don't think — I don't know whether the district court quite felt that way, but that's why I'm here. I don't think the parties here disagree on the facts. And certainly, as pled, what they say is, California law restricts my clients from entering into an enrollment agreement. That is a contract for vocational speech. And that is, therefore, a restriction on our ability to teach and learn. That's a First Amendment problem. I think it's the last part, is that it's a First Amendment problem that the district court disagreed with. Okay. But what I have to find is, given your complaint and this motion to dismiss, it seems to me the issue in front of me is whether you have plausibly alleged that this examination restricts protected speech. At that point, if you're plausibly alleged it, then the burden shifts to them. That is correct, Your Honor. We agree with that. And again, we believe that the complaint here does plausibly allege a restriction on our ability to speak. It is illegal for Bob Smith and PCHS to enroll, to teach a vocational skill to Esteban Norris or anyone else without a high school diploma. That is, I think, very clearly a restriction on teaching and, therefore, a restriction on speech. And we've — And as I understand it, your client cannot execute this agreement unless he takes a test or has other qualifications. That is correct, Your Honor. Esteban Norris may not enter into an enrollment agreement. And if he can't pass the test, since he has no other qualifications, then he cannot execute the agreement. That is correct, Your Honor. Your Honor, I'd like — How does this differ from any other requirements that the state may impose upon a vocational school? For instance, they may — one of the requirements here is that there has to be a school performance fact sheet. There has to — you may have a requirement that the teachers have some level of certification. There may be curriculum requirements. How does this differ from any other requirement, or do you feel they are all restrictions on speech? So, Your Honor, there are lots of things that the State of California can, of course, do which wouldn't trigger First Amendment issues. First of all, it subsidies student loans. This Court has made clear that there is no First Amendment right to have a government subsidy. And so restrictions on student loans, therefore, don't really implicate the First Amendment. Our client doesn't take student loans, and therefore, that's not really an issue. Why should that make a difference? I mean, why should it be that we're not going to waste government money, but we can waste the students' money? Your Honor, because there are different interests at play there. The government has its own — has its own interest in deciding how its money is spent. And that's — from the Supreme Court, that's, of course, Reagan versus taxation with representation of Washington. But when we're talking about people's ability to make their own decisions about their own education, the First Amendment does apply as the cases that we cited in our opening brief and as the cases that Professor Volokh and his amicus talked about. So there are those cases out there that recognize that this sort of teaching and learning is protected by the First Amendment. And again, here, the very specific requirement that we're talking about turns entirely on the content of what is taught and learned. Again, this isn't a general restriction that — that we're claiming an exemption from. This is a restriction that is pointed at our clients because of what they want to — because of the teaching and the learning that they want to engage in. So here, the — you know, going back to Your Honor's question, the question — the first question in any First Amendment case is, one, is this restricting or regulating a person's speech? And there are lots of ways that the government can regulate schools, including schools, that don't trigger these sorts of questions. So for example, you can require any business to pay taxes. That's — that's well recognized. But when you aim, say, those taxes specifically at — at First Amendment activities, then the courts say, no, no, no, that's not allowed. And so general business taxes, of course, can be assessed to a school. But — But again, isn't that the government's duty? If you have plausibly alleged this freedom of speech, then the government has the burden to come forth with all the reasons why this restriction is okay, right? Absolutely. So all of these questions that we're now pausing are really not at the motion-to-dismiss stage, but at another stage. The government has to come forward and say they've got a reason to do what they have to do. That is correct, Your Honor. Let me go one further. The court didn't reach the question of whether the speech was content-based. That's correct. So why shouldn't I just remand this, then, if I just find that you have a plausible allegation, if you will, about freedom of speech and let the district court handle whether it's content-based and what scrutiny applies? You can certainly do that, Your Honor. Under any sort of First Amendment scrutiny, the burden shifts to the government to justify its restrictions on speech. Now, I think as we've made evidently clear, we think this is a content-based restriction on speech. But even if it is a content-neutral restriction of speech, the burden is still on the government, and the government would still have to meet its burden. I would point, Your Honors, to a case like the National Treasury Employees Union case, where the court said, look, what we have in front of us is a restriction on government employees speaking for money. They're perfectly free to speak all they want, so long as it's not for money. They're only restricted when it comes to speaking for money. And the court said, no, that's still a First Amendment problem. Restrictions on being paid for money inhibit people's willingness to engage in free speech, and therefore, that's a First Amendment problem. It's a content-neutral First Amendment problem, but it's still a First Amendment problem. Court or government, please justify these restrictions. And the government there could not do that for lots of tailoring reasons that, again, we are not at yet. Again, the sole question before this Court at this time is whether the First Amendment applies in this case at all in some way, shape, or form. Because if it does, we should be sent back. Well, I think that overstates the question. It seems to me, first of all, you've sort of veered off into a right to contract. This isn't a right to contract case. I mean, this is, to me, it isn't anyway. This is a consumer protection statute, and there are a lot of restrictions on contracts to protect consumers. And I think it's, I believe, uncontested that the right to teach and the right to learn is protected by the First Amendment. But it also seems to me that it's fairly clear that you can have restrictions and regulations of educational institutions, some of which may have an incidental effect upon teaching. And the question, to me, seems to be, is this more than an incidental effect upon teaching? Because that's really, I think, the only issue you can get to at a motion-to-dismiss stage. And it is, Your Honor. I want to allow Professor Volokh to get up here, but the case to look at on that issue is Sorrell v. IMS. Sorrell v. IMS says that restrictions on the sale of protected speech are themselves regulations of speech, not of conduct. And Sorrell could not be any more clear on that point. If Your Honor is looking for the guidance, it's Sorrell. I'd like to invite Professor Volokh, and I will try and reserve the rest of my time on rebuttal. Thank you, Your Honor. Let's hear from Professor Volokh. Thank you very much, Your Honors. Eugene Volokh, representing the academic amici. Let me turn immediately to the question that was asked before. Is this, does this law impose a more than incidental effect? The answer is yes. Because this law says to schools, you may not teach students for money, to be sure, but that's the only way effectively this kind of speech can be conveyed. You may not teach certain students who have not taken the time or perhaps may not be able to pass a particular test, who have not gotten a particular degree. That is saying you cannot speak to these people for money. It's kind of like telling an encyclopedia company, back when encyclopedias were for sale and were very expensive, you can't sell your encyclopedias to people who can't pass some test or who don't have some income level or what have you. That's more than incidental effect. That is telling people you cannot speak to other people. Now, to be sure, the government has considerable latitude to protect consumers in many contexts. But the Supreme Court's First Amendment cases make clear that when, that that too is limited by the First Amendment. One classic example is attempts to protect consumers from deceptive and what some consider abusive fundraising practices. So there were these cases, Munson, Schaumburg, and Riley are the primary ones, where there were attempts to essentially say, look, if you, if you, a fundraiser, spend more than 25% of the funds you raise on your own fundraising expenses, then in that case, that's fraud and that can be prohibited. In Riley, in fact, it was actually just a disclosure requirement that was also involved. So even a milder requirement. The Supreme Court said these prophylactic rules are impermissible when it comes to First Amendment protected speech, which included in that situation charitable solicitation. In this situation, it's education. So if the government wants to protect people against fraud, it can do so. If it wants to require, for example, disclosures of what they're going to be getting, maybe even disclosures of the employment rates of their graduates, we believe that is possible. But we don't think that the government can, even in the interest of consumer protection, essentially say, we think that your speech to these people, again, speech paid for, for money, it's not going to be helpful to them. So we're going to forbid you from doing that. That's more than an incidental regulation. To the extent it's a prophylactic attempt to protect consumers, it's unconstitutional under Schaumburg Violative Cases. So, yes, go ahead. If the government had taken the, one of the provisions that I think is very troubling to me is 94874A. Those are the exceptions. And A is the avocational recreational exception, which means that Mr. Nars could pay $25,000 for golf lessons, but he can't pay $6,000 to learn how to become a farrier. And that strikes me as then requiring the government to inquire as to the nature of the speech, as to whether we're looking at the backswing or whether we're looking at how you pound the shoe on the horse. Your Honor, that is exactly correct. That was what further establishes that this is a content-based speech restriction. So if A weren't in there, does this become a harder case? Your Honor, maybe it becomes somewhat harder, but we think the result is the same. First of all, we think under Holder v. Humanitarian Law Project, a restriction that is aimed at training or education, whether it then further subdivides it into vocational versus avocational, that that is itself content-based. In Holder, as you recall, there was the law-prohibited training, which is instruction or teaching designed to impart a specific skill. It did not further distinguish based on content. But that alone, the Court said, is itself a content-based restriction. But second, even if you were to treat this as a content-neutral restriction, had the avocational exception been absent, you're quite right, the avocational exception makes clear it's content-based. But even if it were absent, even if this were treated as a content-neutral restriction, it doesn't leave open ample alternative channels. And Meyer v. Grant is the key precedent on that. Recall Meyer v. Grant did involve a content-neutral restriction on paying money to signature gatherers. And the Supreme Court said nonetheless, by saying essentially you can't hire signature gatherers, that so sharply restricts your ability to speak that it doesn't leave open ample alternative channels. But we really don't need to reach that issue, do we? Your Honor, I agree entirely that you could say that the plaintiffs have raised a sufficiently plausible claim, and as a result, it should be remanded to the district court. Thank you, Your Honor. Thank you very much. Ms. Lee? Good morning, and may it please the Court, Patti Lee for defendants. The ability-to-benefit requirement regulates economic activity. It regulates a particular type of economic transaction, which is the teaching of, the offering of post-secondary education to a student who has not finished their secondary education. It is meant to protect students who are more likely to be unqualified for secondary education, excuse me, post-secondary education. And the requirement can be precisely tailored to fit the type of training at issue. How can you do that in light of, how can you say that in light of 94874A? You have to look at the content of the speech. Mr. Nares goes out to get lessons, and you're saying, uh-oh, you don't have a high school diploma, so we need to have additional information. Is your guy telling you about a backswing involving a sand wedge, or are you swinging a hammer towards the hoof of a horse? So the— One is permitted, the other is forbidden. The exception that you're referring to is for avocational education, and the statute, the design of the statute is that it applies generally to all private post-secondary education. Post-secondary education is defined as education designed primarily for students who have completed their secondary education or passed the age of secondary education. And several, you know, examples of that are vocational education, academic education, that type of thing. So the exception for avocational education, which is defined as, you know, instruction for personal entertainment, personal enjoyment— Golf lessons. As golf lessons. Golf lessons are not inherently something that you need a secondary degree for. They're not— You're running down the wrong trail there, counsel, because now you've got, the state has got no argument that you have to have secondary education to be a farrier. So to be a farrier is acknowledged, the parties agree, it is a type of vocational training. And— But what if Mr. Nara's owned horses was economically self-sufficient, a wealthy, wealthy man without a high school diploma, and owned horses and wanted to learn how to shoe his own horses? He could certainly do that in a number of contexts. In the particular— By hiring a private tutor? That would be available. But he can't go to the Pacific Coast Horseshoeing School? Pacific Coast Horseshoeing School offers a training course in horseshoeing that is explicitly vocational— Right, but there's no—but vocational is, this is a very, very loose term. It's not guaranteeing anybody employment. There's no professional license involved. And so you can't distinguish between a hobbyist who—somebody who wants to learn how to shoe their own horses, as opposed to somebody who's planning on shoeing horses for somebody else. I believe it is possible to distinguish. You can look at the allegations of the complaint, you can look at the school's advertising. They hold themselves out as offering instruction— Sure, but they will take both types of students. Yes, but the fact that they are promising or advertising themselves as being able to prepare students to support themselves financially, to being able to prepare students to pursue a professional career— And if a golf school said, you come and take—spend $25,000 on lessons with us and we'll get you at least on a satellite PGA tour. Yes, and I think that would be different from just signing up for lessons on a weekend as a hobby. And the school—and so the state has—does make a distinction between those things. All of those are content-based, aren't they? All of those distinctions, you have to know what somebody is saying in order to figure this out. No, you need to know what the school is trying to do. Is it trying to enroll students who are seeking professional advancement, who are thereby more vulnerable to having—to being signed up for instruction that they may not be suited for? The incentives there are very different than someone signing up for a weekend class. Well, to take Judge Bybee's example one step further, as I understand from the allegations and the complaint, they do claim that some people enroll in the school for advocation, not for vocation. And so let's assume the school lies to you and says, we're only offering avocational instruction here. We—everybody who comes to us is, wink, wink, only doing it as a hobby, when in fact you know that some students are probably hoping to make an education out of it. Does that make—so you're just going to rely on the school? If the school styles itself as a post-secondary educational institution— Well, say if they say that we don't, we're not, but they in fact are. Well, it's certainly not just about saying what they're doing. They would need to actually only be teaching it in a recreational form with no, you know, training on business development or how to find clients, that type of thing. But if it really were truly recreational, then it would not be post-secondary instruction under the terms of the Act. The Act applies generally to all post-secondary schools, regardless of the instruction. Some universities will offer adult education, it's non-degree seeking, it's not for credit, but you'll have to pay some kind of a fee. Let's suppose it's $50. Let's suppose that a university is offering a course in Spinoza for $50. Would they come within this regulation? Not degree seeking, no credit involved, but it's, you know, pretty educational. It can be educational, but if it is not going to lead to a qualification, a degree, something that can be used for professional advancement, something where there seems to be some financial gain in it for the student at the end of the course— The advertisement says, you know, come and we'll make you a better thinker. Anybody who reads Spinoza and understands Spinoza is going to be a better human being. Then I believe that that would qualify as education for personal enjoyment or pleasure and would not be subject to the Act. But if I thought taking a course in Spinoza would make me a better lawyer, then it would? Well, if it were offered by a school that was holding itself out and actually providing instruction in Spinoza along with, you know, other things that are hallmarks of post-secondary education where you would be expected to also receive training in business development, that type of thing, or skills needed to practice a particular profession, those are types of things that are regulated by the Act, that are covered by the Act. And so the Act, as I have said, generally applies to all post-secondary— How is the Act enforced? This is the same question I asked Mr. Avalar. Yes. A post-secondary—a school that wants to offer post-secondary education needs initial approval from the Bureau, and the Bureau will check things over to make sure that they are meeting the minimum operating standards. Does it acquire some kind of a certificate to operate from the state? Yes. And so there's an initial approval, and then there are re-approvals every five years. There are visits to the school, one announced, one unannounced, and a five-year period. And so if you're enrolling people that are not entitled to be enrolled, then you can have your certificate revoked? That's correct. Okay. What about the provision I pointed out to Mr. Avalar that deals with the enforcement? Is that a separate thing, that the contract cannot be enforced? I'm not sure whether the student—you know, that specific provision in and of itself authorizes a separate contract action on behalf of the student. I think a student in that situation would have a strong argument, but I don't specifically know. Does the state regulate the students directly in any way? I guess I'm not sure what you mean. Well, the statute says the student shall not enroll. It doesn't say the school shall not enroll the students. I'm trying to figure out whether that's an active or a passive verb and whether if a student enrolls, whether the student may be subject to some kind of state regulation. I don't believe so. I think that the language there is meant to indicate that the school should not allow the student to enroll. The student is not allowed to enroll. But the statute suggests that the student cannot execute the agreement. Yes. So, it seems to me that's a regulation of the student. And I think that's a fair reading. Well, I was just listening to what Judge Bybee asked you, and you seemed to think there was no regulation of the student. Does the state take after the student if he executes the agreement without a test? Yes, Your Honor. I think that is more accurately what I meant to say in response to Judge Bybee's question is that there is a prohibition on the student enrolling. If the student enrolls, I'm not aware of the Bureau going after any particular student for that. Okay. Frankly, based on your argument here today, it seems to me that I should, even if I believe that there's a plausible allegation here, I should just go ahead and determine what kind, whether this is content-based speech or isn't. Well, the order of the analysis would be first to determine whether this is even a regulation of speech. I understand. But once, having found that, even though the district court didn't reach the question, why not just reach the scrutiny question and go forth? It seems to me the briefing has been completed. I don't know what further development of the record would change the outcome. The results seem pretty clear, especially given your argument today. Well, I do believe that the court could reach the question as a matter of law of whether this is a content-based regulation of speech. Because everything's in the record, and I don't need anything else to make that determination? Well, that's not to... The only reason it would be a question of law is everything is factually undisputed, and nobody's going to add more to my record, and therefore, it seems easy to determine that right now on this record rather than to send it back for further determination. Well, there are definitely facts that are not in the record. For example, the number of alternative exams that have been approved under the particular... But that has nothing really to do with it, does it? Well, I think if the court determines that some form of heightened scrutiny is appropriate, then the operation of the alternative... Well, we wouldn't be applying the scrutiny. We'd be just saying what scrutiny ought to be used. Send it back to the district court to determine whether it ought to go forward. I don't agree that there is no way for this court to apply scrutiny right here, right now. If the court were to determine that this is a speech regulation, that it's subject to some form of heightened scrutiny, there is information before the court, and I think it is possible for the court to find as a matter of law that this serves a substantial governmental interest. But the difference between heightened scrutiny and strict scrutiny might make a difference for the state. Have you pressed an argument that you can satisfy either heightened scrutiny or especially strict scrutiny? Yes, we did present that argument in our brief, and I do believe we could satisfy strict scrutiny. And if we were to determine that speech was involved here and we thought that it was content-based and therefore either we had to apply heightened scrutiny or probably strict scrutiny, would the state like an additional opportunity to brief that question before either this court or a district court before we decided that you couldn't satisfy that? Yes, because as I said, there are numerous facts that are pertinent to those issues. So if we were to find that this is speech, should we send it back to the district court to determine whether you get heightened scrutiny or strict scrutiny, or should we decide that question? And if we decide that it's heightened scrutiny and strict scrutiny, do you want us to send it back to the district court to see whether you can satisfy that? Yes, particularly intermediate scrutiny, heightened scrutiny. Those are issues on which it is clear that the government is able to supplement what was in the legislative record, that type of thing, in order to satisfy those types of scrutiny. I do believe it is possible for the court to determine that intermediate scrutiny is satisfied on this record. If the court does not agree, I do think that the state is entitled to present additional findings that go to So you're really saying if you agree with us, decide it, but if you don't, send it back? That's right.  And part of the reason that I think it is possible for this court to determine that heightened scrutiny is satisfied right here, right now, is because it is well recognized that the types of problems that students attending private postsecondary schools can run into if they are not well suited to that type of education. There is both a Federal and a State ability-to-benefit requirement, which reflects the government's concern with the problems in this area. Would this impact the Federal requirement, do you think? If we were to determine this did affect speech? I think if this court were to find that there is a problem with the State ability-to-benefit requirement, I don't know why there would not also be a problem for the Federal ability-to-benefit requirement. And on that point for the Federal requirement, I should just note that although the Federal requirement only applies to the spending of Federal funds, to Federal financial student aid, that is simply because of the limits of the spending clause there. The Federal government is only able to regulate in terms of Federal money being spent there. I appreciate your argument. Do you think that's very well briefed? Because I'm not sure you're right about what you just said. I mean, the bottom line is I'm trying to figure out all the things that this might impact, and I'm not sure that it impacts as you have suggested it. I don't think it's very well briefed, to be fair. Well, I certainly, in terms of everything that this could impact, there are, as was previously discussed, numerous consumer protection laws that this would impact. They are laws that regulate economic activity that happens to involve speech. This particular requirement is not a prohibition on speech. There is a way for Mr. Naras to enroll in the program if he doesn't have a high school diploma. That's taken test. He needs to demonstrate in a manner that is left open by the statute. There are various ways under the statute to demonstrate this. But that all sounds like a restriction that he's got to somehow overcome by just arguing it. Well, I don't think that's quite an accurate way to look at it because there are many different requirements that apply, the prerequisites for any kind of degree or educational opportunity. But this isn't about any kind of degree. This isn't the same as setting a standard in a school as to what they have to have to have the degree. Well, I think that this is a generally applicable statute for all post-secondary schools. Okay. Is that well briefed? I'd like more information about that if you've got more to say than is in your brief. Yes, Your Honor. So in terms of the general application of the Act, it applies to all private post-secondary schools with limited exceptions. And so it really doesn't matter what type of vocational training is at issue. For example, it doesn't matter what type of academic training is at issue. It really only matters that the school is styled and actually conducts post-secondary education. And so this carve-out or exception, this limited exception for avocational education, for example, if the court were to find that that is problematic, you know, after finding what the correct level of scrutiny is and going through the whole analysis, if it were determined that that particular exception is a content-based restriction, which is, I think, that is the key to Plaintiff's argument here, is that standing alone, it's a generally applicable regulation. However, there's an exception. But that's the government's burden, right? If the applicant here can plausibly allege a freedom of speech, it's the government's burden to show that it's something they ought to be able to restrict. Yes, that is the government's burden. So I don't think it's their burden. I think it then becomes your burden. Well, their complaint is specifically, I think, about the fact that there is this avocational exception that then makes it a content-based speech regulation, which the government obviously does not agree with that. But even if the court were ultimately to agree with that on the merits, that is an exception to a generally applicable statute. That exception could be severed. Now, that's not practically possible, though, is it? I mean, you're not going to have everybody who wants to take a golf lesson provide certification that they graduated from high school. If that is the only, well, I, you know, never say never. I mean, if I want to take piano lessons, I don't want to enter into a contract and certify that. I mean, without that exception, this law would fail. As a practical matter, it seems to me. Well, the legislature may choose to revisit it and restructure it. But if the problem is an exception, which the court thinks makes it a content-based statute, and then the statute cannot satisfy the heightened scrutiny, then the solution is to sever that exception. That is what the court recently did in the Dukewid v. Facebook case that is cited in the most recent 28-J letter. Not for this proposition, but in that case, that was a challenge to a ban on robocalls to cell phones. And there was an exception for calls to collect on a debt owned or backed by the U.S. government. That was found to be a content-based provision. You have a number of other exemptions. That just happens to be A, and it happened to be a very obvious problem. But you've got a number of other exceptions in there. Yes, and I'm not aware that there's a problem with any of them in terms of being content-based. In terms of the allegations made or the arguments raised by the appellant? Is that what you're saying? Yes. Their arguments are focused on the exemption about a vocational recreational training. And I see that my time is up, unless the court has anything further. Thank you, Ms. Lee. Mr. Avalar, you have time remaining. Thank you, Your Honor. In the about two minutes I have remaining, I'd like to hit just a couple of points. First of all, this is a restriction specifically on the buying and selling of vocational teaching. And Sorel v. IMS tells us that the regulation of the sale of protected speech is a regulation of speech, not of conduct. So although conduct speech questions can be difficult, as the U.S. Supreme Court recently recognized in NIFLA, in this case it's pretty simple. Sorel has us covered. The statutory exception for avocational teaching that we've been talking about simply demonstrates the problem with the definition of private post-secondary school in the first place. That definition turns on itself what is taught. A private post-secondary education is one that is vocational or academic. You still have to look at what is being taught in order to determine whether it falls within that bucket. The exception simply makes that very clear. If there are concerns about the way schools are holding themselves out to the public, that's a concern about commercial speech, the way that schools are interacting with the public, inviting them to come to their school. But commercial speech is still protected by the First Amendment. And so we are still within the First Amendment world, and we should still be sent back to the district court for further proceedings. There were questions about does this regulate the student. Whether it regulates the student directly or not, it restricts the student's ability as a listener to access speech. What it said is to Esteban, you are not allowed to spend your money to hear this speech. That's a restriction on speech. And, again, the fact that money is involved here does not change the legal analysis at all. That's the National Treasury, Employees Union, and a host of other cases. One other point, Your Honor, there was a lot of talk about the State's interests here. Those are all questions of tailoring, which go to meeting the State's burden. That's not at issue before this Court on this 12b-6. We, therefore, ask that you vacate the lower court decision and remand for further proceedings. I'm happy to answer any other questions, but I see my time is up. Thank you very much, Mr. Avelar. We thank all counsel for the argument in a very curious case. With that, we have completed the oral argument calendar for the day, and the Court stands adjourned. Thank you, Your Honor. All rise.
judges: Melloy, Bybee, N.R. Smith